PEOPLE v. WILSON.

1. CRIMINAL LAW—EVIDENCE—RAPE—UNCHASTITY OF COMPLAINING WITNESS—IMPEACHMENT.

Cross-examination, on a trial for statutory rape, tending to show that the complaining witness, a female under 16 years of age, had made false accusations of criminal relations with other men in the community than respondent, and had subsequently admitted the falsity of her charges, was improperly excluded on the ground that her chastity was not in issue; the evidence was competent to affect or impeach her credibility.

2. Same—Trial—Jury

> And the court erred in refusing to permit a brother of one of the jurors to testify relative to respondent's good character; witness' relationship did not affect his competency as a witness, nor did the fact that other witnesses were sworn to the same point meet the objection or cure the error.

Error to Missaukee; Lamb, J. Submitted June 13, 1912. (Docket No. 128.) Decided July 10, 1912.

Ari W. Wilson was convicted of statutory rape. Reversed.

*Norman W. Dunan* and *Sawyer & Penny*, for appellant.

*Franz C. Kuhn*, Attorney General, and *Henry Miltner*, Prosecuting Attorney, for the people.

Stone, J. The respondent was convicted and sentenced for the crime of statutory rape upon one Myrtle McNeil, a female child under the age of 16 years, to wit, of the age of 15 years.

The respondent has brought the case here for review upon writ of error, assigning a number of errors. We shall not find it necessary to discuss at length all of the assignments of error.

The first and second assignments of error may be considered together, and relate to matters which arose upon the cross-examination of Myrtle McNeil, the complaining witness. Upon her direct examination she had testified to an act of sexual intercourse on July 1, 1911, as charged in the information. Upon her cross-examination the following occurred:

"*Q.* Now, Myrtle, haven't you made the same complaint against a number of other men?

"*Prosecuting Attorney:* That is objected to as being immaterial and incompetent.

"*The Court:* I sustain the objection.

"*Q.* Now, didn't you make a similar complaint against Mr. Parks when you stopped working there?

"*Prosecuting Attorney:* We object to that.

"*The Court:* I sustain that objection, and I will say now that you need not pursue that line of cross-examination at all, because I shall sustain every objection made to a question of that kind.

"*Respondent's Counsel:* We propose to show, your honor—

"*The Court:* Now, I'll not permit that. I want it thoroughly understood that there will be no testimony admitted here, or any question put to this witness bearing on her chastity or want of it.

"*Respondent's Counsel:* It is not asked for that purpose, your honor. It is to show her credibility as a witness.

"*The Court:* It is not admissible for that purpose.

"*Respondent's Counsel:* Any offer along these lines will be denied by the court? Do I so understand it?

"*The Court:* Any statement of what you propose to prove along these lines will be denied; yes, sir.

"*Respondent's Counsel:* Note an exception."

During the course of the cross-examination of the same witness, and in the absence of the jury, the following occurred:

"*By Respondent's Counsel:* Your honor, in order that I may make my offer of yesterday clear to the court, which I did not then do, I offer at this time to show that the witness Myrtle McNeil has made accusations similar to the one in question against three different men in this county, who are our best citizens, and, after making these accusations, she has acknowledged them to be false and untrue. I ask to be allowed to show that—ask it at this time so that Myrtle McNeil may be cross-examined upon it. Then I will follow that up, and carry it out by producing those men against whom she made the charges, and the people to whom she confessed those charges were false. I want this to be understood, your honor, but I offer it, not to show that the credibility of this witness can be affected by her lack of chastity, but I offer it to show that she is morbid—in a morbid condition of mind and body—and she is subject to hallucinations in making charges of this kind. This is part of our main defense, and I wish to cite the case of *People* v. *Evans.*

"*The Court:* Since that case has been decided the law has been changed, raising the age of consent from 14 to 16 years of age. I am quite familiar with the law and also

with the proposition that, if this girl was 16 years of age or over, that specific acts of unchastity could be gone into for the purpose of affecting her credibility. But this is a different proposition. There is no question but that would apply if the girl was over the age of consent. The age of consent at that time was 14, so it would not be a parallel case with this at all.

" *Respondent's Counsel:* We claim, your honor, to have the right to come in here and show that she is subject to making these identical charges, and then, after she has made them, confess that they are false and untrue.

" *The Court:* I think, if you want to affect her credibility in any way, you would have to do it in the regular way; that is, her credibility as a witness, her truth and veracity, or the lack of it, would have to be shown in the usual and general way, and not in specific instances. I think that would be a proper subject of inquiry. But to ask her questions on the stand that would clearly affect her chastity by plain inference would be within the rule.

" *Respondent's Counsel:* Well, I want to go one step further: Does the court refuse to allow me to bring those parties on, and show that she has made those charges concerning them, and also that she has confessed them to be false, would the ruling of the court prevent me doing that?

" *The Court:* Yes; it would.

" *Respondent's Counsel:* Those propositions, then, are denied by the court?

" *The Court:* Yes, sir.

" *Respondent's Counsel:* Note an exception."

Error is assigned upon these rulings. It is the claim of respondent's counsel that the above rulings constituted prejudicial error, and that he should have been allowed, not only to cross-examine the witness on the subject, but also to offer affirmative evidence of the fact of such charges and their denials, both as affecting her credibility as a witness, and as bearing upon her mental condition; and he cites in support of his position the case of *People* v. *Evans*, 72 Mich. 367, 377, 379 (40 N. W. 473). In that case the trial court permitted the question to be asked and answered on cross-examination, but held that respondent was concluded by the answer, and could not

contradict the witness by other evidence.   Exception was taken, and error was assigned upon this ruling.   This court said:

"We think this evidence should have been admitted. * * * The jury were asked to take her story, and in reliance thereon find the respondent guilty.   It became a question of fact for their consideration; and they ought to have been made acquainted, under the circumstances stated and proven, with the mental and moral qualities of the girl.   If she was accustomed, and had on numerous occasions, as claimed by counsel for respondent, made statements charging, not only her brothers, but numerous other men of that community, with other similar offenses, and then admitted the falsity of such charges, it would have a tendency to show a morbid condition of mind or body, and go a long way in explaining this charge, which, under the circumstances, and the surroundings shown to exist, seems almost unaccountable. It is claimed that the testimony offered would tend to show that she was the subject of hallucinations upon this subject, and is in its nature independent evidence, and in no sense collateral.

"We think this view is sustained in the case of *Derwin* v. *Parsons*, 52 Mich. 426 (18 N. W. 200, 50 Am. Rep. 262). Mr. Justice COOLEY, in his opinion in that case, says:

"'The case was one which justified a good degree of liberality in the admission of evidence.   The parties were directly opposed in their testimony, and the jury would be likely to accept the statement of the one who was best supported by the circumstances. * * * To questions whether the plaintiff had not made charges similar in nature against two other persons, objection was made, but we have no doubt it was proper to allow them, and also to prove the facts, if she denied having made the charges.'"

The trial judge seems to have been of opinion that the change in the statute relating to the age of legal consent should distinguish the instant case from the *Evans Case*. Both were dealing with the testimony of the complaining witness, and both had to do with the credibility of the witness as such, and not with the question of chastity, or unchastity.   In fact, it was sought to show that the girl by her own statements had not been unchaste, but that she

170 MICH.—43.

was not entitled to belief by reason of contradictory statements that were material. We think that both the trial judge and counsel for the people misapprehended the scope of the inquiry, which was not an attempt to show other acts of unchastity, but other statements inconsistent with her testimony. Counsel for the people cite cases to the effect that other specific acts of unchastity cannot be shown in such a case; also, that the girl's general reputation for unchastity is not involved in a case where the girl is under the age of legal consent. We agree to this doctrine, but repeat that we do not understand by the line of evidence offered that any attack was being made upon the chastity of this girl. As cross-examination, as laying the foundation for collateral impeachment, and as an offer of independent evidence relating to similar charges and their denials, we are constrained to hold that the court erred in excluding the offered testimony. It is no answer to say that the girl was corroborated by other witnesses. That fact would not change a rule of evidence.

The eighth assignment of error is to the effect that the court erred in refusing to allow William Kelean, a witness called for the defense, to testify because his brother was on the jury. The record shows that the respondent sought to show his good character by a number of witnesses residing in the community. Among others William Kelean was called to testify upon that subject. Upon the objection of the assistant prosecuting attorney the court said:

"I think I will sustain the objection to his being sworn on the ground stated by Mr. Gaffney; he being a brother of one of the jurors;" to which ruling the respondent excepted.

We are of the opinion that this ruling was unwarranted, and cannot be justified. The counsel for the people seek to justify the ruling by saying that numerous other witnesses did testify upon the subject, and that the circuit judge had the right to limit evidence of this kind. We have quoted the language of the court to show

that the ruling was not placed upon the latter ground. The materiality and the importance and bearing of testimony of good character have been often referred to by this court. *People* v. *Garbutt,* 17 Mich. 27 (97 Am. Dec. 162); *People* v. *Jassino,* 100 Mich. 536 (59 N. W. 230); *People* v. *Laird,* 102 Mich. 135, and note (60 N. W. 457). We know of no rule that gives the trial judge the right to exclude a witness for the reason stated, and we think that it is a practice that should not be sanctioned. We are of opinion that by this ruling the respondent was denied a substantial right.

We find no other reversible error in the record. For the errors discussed, the judgment of the circuit court is reversed and a new trial granted. The respondent will be remanded, to be dealt with as the law directs.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and BIRD, JJ., concurred. BLAIR and OSTRANDER, JJ., did not sit.