No. 48,646

STATE OF KANSAS, *Appellee,* v. CLARENCE R. JORDAN, *Appellant.*

(574 P 2d 194)

Opinion filed December 10, 1977.

*Dennis D. Prater,* of Catt and Prater, of Lawrence, argued the cause, and was on the brief for the appellant.

*Michael J. Malone,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nancy P. Johnson,* legal intern, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions of five counts of kidnapping (K.S.A. 21-3420[b]), three counts of aggravated robbery (K.S.A. 21-3427), and one count of felony possession of a firearm (K.S.A. 21-4204). This case arose out of the armed robbery of the Mr. Steak restaurant in Lawrence, Kansas, on February 28, 1976. Three black males entered the restaurant separately. One robber forced the waitress to empty the cash register. A second robber forcefully took the wallet of a customer, Ronald F. Cade. After obtaining the money, one of the robbers ordered the waitress and four customers into a walk-in refrigerator. As this was occurring, the third robber forced the cook to unlock the safe. Having accomplished their business, the robbers left. The only real issue to be determined at the trial was the identity of the defendant, Clarence R. Jordan, as one of the robbers. The sufficiency of the evidence to convict the defendant Jordan is not an issue raised on the appeal.

The only point raised is that the defendant should be granted a new trial because the prosecutor cross-examined the defendant Jordan concerning his post-*Miranda* silence in violation of the

due process clause of the Fourteenth Amendment to the United States Constitution. The defendant relies primarily upon *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976); *State v. Heath,* 222 Kan. 50, 563 P.2d 418; and *State v. Mims,* 220 Kan. 726, 556 P.2d 387.

At the trial, highway patrolman Kearns testified that he heard a police radio dispatch about the robbery and shortly thereafter spotted a vehicle which answered the description of the getaway car. Patrolman Kearns turned on his flashing red light. The suspect vehicle immediately increased its speed and attempted to elude the highway patrol car. A high-speed chase ensued through a residential area of Lawrence. During the chase, patrolman Kearns observed the driver of the vehicle and the passenger, identified as the defendant, throwing various objects out of the speeding car. The vehicle was finally stopped by a police road-block and the occupants were arrested. The objects thrown by the defendant Jordan were later identified as a paper sack containing the stolen money, a revolver, and also Mr. Cade's wallet.

At the trial defendant Jordan took the stand to explain how he happened to be in the getaway vehicle and why he had possession of the fruits and instrumentalities of the crime. According to Jordan, on the afternoon of the robbery he rode as a passenger with his friend, Clarence Reed, from Topeka to Lawrence. Defendant had an argument with his girlfriend and wanted to "cool-off." Reed dropped Jordan off at a 7-11 store near the turnpike entrance. According to Jordan, Reed returned with two men in about 30 to 45 minutes. Reed introduced Jordan to the two men. Reed then handed the other men a sawed-off shotgun wrapped in a blanket and which he had taken from the back seat floorboard of the Reed vehicle. The men then left. When the police chase began, Jordan assumed that Reed had drugs in his possession and that the police were pursuing Reed for that reason. As the car turned the corner, money spilled out from under the front seat. At that time Reed confessed that he had just committed a robbery. Reed refused to stop the car to let Jordan out. As the chase continued through a residential area, Jordan became afraid that the car would crash or injure a child. To get Reed to stop the car, Jordan threw the objects out the window. Reed finally stopped the car after encountering a police road-block.

During the prosecutor's cross-examination of Jordan the following exchange occurred:

"Q. Mr. Jordan, who else have you told that statement to?
"A. Told what statement?
"Q. Just what your story is here, what you just stated here today?
"A. I haven't told nobody that I can remember.
"Q. What about the police officer who stopped the car?
"A. That stopped the car?
"Q. Yes. Why didn't you tell him that?"

At this point defense counsel approached the bench and requested the court to declare a mistrial. The trial court refused to declare a mistrial but did sustain defendant's objection and admonished the jury with the following statement:

"THE COURT:   The last question asked is improper and it is stricken and the jury is admonished to disregard it."

From that point on the matter was not brought up again, either during the examination of other witnesses or in arguments of counsel.

Counsel for the defendant Jordan relies upon *Doyle* and *Mims* claiming it was constitutional error for the prosecutor to inject before the jury the fact that Jordan had not told his story to the police officer who stopped the vehicle in which he was riding. Counsel further argues that the identification of Jordan as one of the robbers was questionable, and therefore the conduct of the prosecutor could not be considered harmless error.

Under all the circumstances shown in the record, we have concluded that the question asked by the prosecutor, although improper, constituted harmless error beyond a reasonable doubt. In reaching this conclusion we note that the rule of *Doyle v. Ohio*, supra, does not require an automatic reversal in every case where the prosecutor asks a defendant why he did not tell his story to a police officer at the time of arrest. In the case now before us we note that the defendant never answered the propounded question. On defendant's objection the trial court promptly ordered the question stricken as improper, so advised the jury, and admonished the jury to disregard the question. The matter was never brought up again by the prosecutor during the trial. We further note that the evidence of guilt in this case was very strong. The defendant was captured shortly after the robbery in the getaway vehicle. During the chase the defendant threw various articles

connected with the crime out the window of the speeding car. At the trial the defendant was positively identified by two eyewitnesses as being one of the robbers.

In *Doyle v. Ohio,* supra, the trial court, over defense counsel's objections, permitted the prosecutor a wide-ranging cross-examination of the defendants on their silence after receiving *Miranda* warnings. The state of Ohio did not claim harmless error under the circumstances. In *State v. Heath,* supra, and also in *State v. Clark,* 223 Kan. 83, 574 P.2d 174, the prosecutor, in addition to cross-examining the defendant on his postarrest silence, commented thereon in his closing argument. In *Health* and *Clark* we held this to be reversible error under all the circumstances. In *State v. Mims,* supra, the prosecutor on cross-examination of defendant asked him why he didn't tell his alibi story to the police. Defense counsel moved for a mistrial. The trial court denied the motion for a mistrial but sustained the objection to the question and the matter was not pursued further or mentioned again in the trial. We held that under all the circumstances the single question propounded by the prosecutor, which was never answered and to which an objection was sustained, constituted harmless error beyond a reasonable doubt and we declined to reverse the case.

Considering the totality of the circumstances in this case it is our judgment that the mere asking of the question by the prosecutor was not, in and of itself, sufficient to require the trial court to declare a mistrial or to justify this court's setting aside the verdict of guilty and granting a new trial to the defendant.

The judgment of the district court is affirmed.