No. 48,856

STATE OF KANSAS, *Appellee,* v. SILAS TAYLOR, *Appellant.*

(574 P 2d 210)

Opinion filed December 10, 1977.

*Brett H. Robinson,* of Topeka, argued the cause, and was on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by Silas Taylor, Jr., following his conviction by a jury of aggravated robbery in violation of K.S.A. 21-3427. The basis for the only error claimed lies in the prosecutor's cross-examination of the defendant.

The state's evidence was that the defendant and another man, Julius Richardson, came to a used car lot in Topeka on May 10, 1976. Taylor and Richardson came together, and together they looked at several cars. Taylor then went into the office and engaged Lloyd Ferguson, a salesman, in conversation. Ferguson knew the defendant, but he was not acquainted with Richardson. Richardson soon entered, pulled a handgun, and robbed Ferguson of some five hundred dollars. Richardson then ran out the door, closely followed by Taylor; both men jumped in a waiting automobile, driven by a third man, and made their escape.

Taylor testified on direct examination that he went to the used car lot by himself. He was not with Richardson, and did not know him. Taylor was in the office, talking to Ferguson, when Richardson entered, pulled a gun, and robbed Ferguson. Richardson then turned to Taylor and asked, "You got any money?" Taylor replied, "I ain't got no money." Richardson then told Taylor to "Go," and Taylor left. He did not get into a waiting car, but left the scene on foot. He was scared and he ran. He was not with Richardson, neither came nor left with him, and had nothing to do with the robbery.

Taylor's cross-examination proceeded as follows:

"Q. What your testimony, is, then, that you are a witness to a robbery, just an innocent bystander. Is that correct?
"A. Yes, sir.
"Q. Did you report it to the police?
"A. No, sir.
"Q. Why?
"A. Scared.

. . . . . . . . . . . . . .

"Q. An attempted robbery was pulled on you too; wasn't it?
"A. Oh, yes, sir.
"Q. . . . Why were you scared?
"A. Just scared.
"Q. Of what?
"A. I don't know.

. . . . . . . . . . . . . .

"Q. Did you see anybody on your way out the door on the car lot?
"A. There was a couple of people in the car lot.
"Q. Did you see them?
"A. Yes, sir.
"Q. Did you warn them that there was a robbery going on?
"A. No, sir.
"Q. Didn't tell anybody; did you?
"A. No, sir.
"Q. First time today you've told anybody that you saw a robbery going on; isn't it?
"[Defense counsel:] Object to that, Your Honor.
"THE COURT: The question, the first time he told anybody. Is that the objection?
"[Defense counsel:] Yes, Your Honor.
"THE COURT: Well, you can ask the question—
"Q. Is this the first time today you've told anybody that question—that answer about the robbery?
"A. Yes, sir."

Defense counsel moved for a mistrial, contending that the state had cross-examined the defendant about his pretrial silence in violation of the rules laid down in *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976) and *United States v. Hale,* 422 U.S. 171, 45 L.Ed.2d 99, 95 S.Ct. 2133 (1975). In overruling the motion the trial court said:

"It's very clear from the testimony that this is not a situation when the defendant was immediately arrested or at the site arrested, and any comment he would have made would have had to have been in an arrest or custody situation. The testimony is that he contends that he was an almost victim of the crime himself; he just happened to be present; that immediately upon leaving, his testimony was there were two people whereas other testimony was that there were three. In addition, there was a period of some 17 days . . . before he was

arrested. In that period of time, he went over and talked to one of the other witnesses, Scofield, and was irritated because Scofield had implicated him and apparently didn't say that he was an almost victim. There were various opportunities that he could have talked to other people about his exact role anytime or could have called the police or could have reported himself the victim; and it does not infringe on his right to remain silent because these are just things before he was under arrest or in custody. So the motion will be overruled."

In *Hale,* supra, the defendant was cross-examined about his failure to offer exculpatory information to the police *at the time of his arrest.* Noting that he was in custody and had been given the *Miranda* warnings, the Supreme Court said:

". . . [W]e hold that under the circumstances of this case it was prejudicial error for the trial court to permit cross-examination of respondent *concerning his silence during police interrogation* . . . ." (p. 181.) (Emphasis supplied.)

*Doyle,* supra, involved similar facts. The defendant there had been cross-examined about his failure to tell his story to the arresting officer. The court held:

". . . [T]he use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. . . ." (p. 619.)

We followed *Doyle* in *State v. Mims,* 220 Kan. 726, 556 P.2d 387, where we said:

"We interpret the decision of the United States Supreme Court in *Doyle* to settle the question so as to make it constitutionally impermissible for a state prosecutor to impeach a defendant's exculpatory story told for the first time at the trial by cross-examining him as to his post-arrest silence after receiving the warnings required by *Miranda* . . . ." (p. 730.)

The rule was further discussed and applied in *State v. Heath,* 222 Kan. 50, 563 P.2d 418; *State v. Clark,* 223 Kan. 83, 574 P.2d 174; and *State v. Jordan,* 223 Kan. 197, 574 P.2d 194.

Defendant calls our attention to *People v. Sheperd,* 37 Colo. App. 336, 551 P.2d 210 (1976). The facts of that case, however, distinguish it from the case at hand. Sheperd was charged with forcible rape; the defense was consent. During cross-examination of the defendant, an objection was interposed by defense counsel before the district attorney was able to complete the following question:

" 'You didn't go turn yourself into the police to try and straighten the situation—' " (p. 337.)

On appeal, Sheperd contended that the trial court erred in denying his motion for a mistrial, even though his objection to the question was sustained. The Colorado Court of Appeals said:

". . . Silence, *in the form of failing to appear voluntarily before the police and give a statement, prior to being arrested,* is of such little probative value that it should not be introduced to impeach defendant's trial testimony as to his innocence. . . ." (p. 337.) (Emphasis added.)

The court held that while the reference to silence was improper, it was not prejudicial under the circumstances, and was not reversible error.

Taylor, unlike Sheperd, claims that he was the victim upon whom the offense was perpetrated. Cross-examination disclosed that Taylor did not act as a normal individual would under the claimed circumstances. He did not shout warnings to or seek aid from bystanders; he did not raise the "hue and cry" of one who has been held up by an armed robber; and as the trial court pointed out, he did not tell a friend, who accused him of committing the robbery, that he himself had been robbed. An accused has no duty to volunteer his exculpatory story following arrest (*State v. Clark,* supra), and the prosecution may not introduce evidence, cross-examine, comment, argue, or otherwise emphasize the failure of an accused to make such a disclosure upon or following his arrest.

However, the rule does not preclude the state from attempting to show, upon cross-examination, that the defendant's actions and responses at and after the occurrence, and long prior to arrest, were not the usual actions and responses of one who has been robbed. Had Ferguson made no outcry, the defense would indeed be lax if it failed to inquire as to his failure to do so. Although the prosecutor's final question covered all time since the occurrence, and thus included the time the defendant was in custody, there was no emphasis on the latter period and no argument was made to the jury that the defendant failed to tell his story to the officers following arrest or while in custody.

Under the circumstances, we think the defendant's failure to alert others that an armed robbery was in progress, and his failure to tell others that someone attempted to rob him, is of probative value and was properly admitted in evidence. That the final question was broad does not, under the circumstances, constitute

error of constitutional or prejudicial proportions. The questioning really had nothing to do with defendant's silence after arrest and after receiving the *Miranda* warnings. His silence at that stage was not emphasized, and was not used for impeachment purposes contrary to *Doyle*.

What is constitutionally prohibited under *Doyle* is the prosecution's use, for impeachment, of the defendant's failure to respond to police interrogation—his silence after receiving the *Miranda* warnings. Pre-arrest statements or admissions made by a defendant to non-governmental witnesses are not constitutionally protected. *State v. Little,* 201 Kan. 94, 98, 439 P.2d 387. Likewise, the constitution does not protect an accused's pre-arrest silence in the presence of persons who are neither governmental officials or their agents. The probative value of the statements, admissions, or silence, is a matter to be determined by the trial court.

The judgment is affirmed.

McFARLAND, J., not participating.